IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CARLA WILLIAMS,

        Plaintiff,

v.

KEMPER CORPORATION,

        Defendant.

Case No. 3:21-CV-1341-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is the Motion to Compel Arbitration and Stay Proceedings filed by Defendant Kemper Corporation. (Doc. 15). Plaintiff Carla Williams opposes the motion. (Doc. 17). For the reasons stated below, the motion is granted, and this matter is stayed pending arbitration.

### BACKGROUND

Plaintiff Carla Williams, an African American woman, was employed as a project manager for Merastar Insurance Company, a subsidiary of Defendant Kemper Corporation ("Kemper"). (Doc. 6). Despite having an exemplary employee record, Williams claims she was treated differently than other employees—namely, those who were non-Black, male, and/or under the age of 40. (*Id.*; Doc. 17). Williams alleges she was required to train herself, while her White, male co-workers received company training. (*Id.*). Those same co-workers then received a $1,000 training bonus, while Williams was told she did not need any more education. (*Id.*). Williams also sought a transfer within

the corporation, but her request was denied, despite the fact that similarly situated male, non-Black employees were allowed to transfer freely. (*Id.*). In August 2019, Kemper terminated Williams.

On October 27, 2021, Williams filed a complaint against Kemper alleging retaliation, wrongful termination, and sex, race, color, and age discrimination under 42 U.S.C. § 1981, the Fourteenth Amendment to the U.S. Constitution, and Illinois state law. (*Id.*). Among other relief, Williams seeks back pay, compensatory damages, punitive damages, and attorney's fees and costs. (*Id.*).

## MOTION TO COMPEL ARBITRATION

In response to Williams's complaint, Kemper has moved to compel arbitration and to stay these proceedings pursuant to the Federal Arbitration Act. (Doc. 15). According to Kemper, Williams voluntarily entered into a valid and enforceable arbitration agreement when she began her employment in 2017. Furthermore, because the arbitration agreement includes a delegation clause, the arbitrator and not the Court must decide whether the arbitration agreement applies to Williams's claims.

In its motion, Kemper asserts that, as a condition of employment, employees of Kemper and its subsidiaries were required to accept the Kemper Arbitration Agreement. (Doc. 15 at p. 2). Employees accessed the agreement on an internal training website called SkillPort. (Doc. 15-1 at 2). Accessing the module and SkillPort required employees to enter their own pre-existing User ID and Password. (*Id.*).

On May 18, 2017, Williams accessed and completed the Kemper Arbitration Agreement on SkillPort. (*Id.*). Accessing the Kemper Arbitration Agreement module

opened a slideshow beginning with instructions that included a link to access and read a PDF copy of the Arbitration Agreement. (*Id.*). The instructions stated that Kemper requires all of its employees to submit an Arbitration Agreement. (*Id.*). The slideshow then provided the text of each section of the Arbitration Agreement in sequence. (*Id.* at pp. 2, 13-24). Advancing from one section of the Arbitration Agreement to the next in the slideshow required the employee to click a Continue button, which only appeared on the slide after 30 seconds; advancing the slide reset the 30-second timer for the following slide. (*Id.* at p. 3). After clicking "Continue" on the final section of the Arbitration Agreement, a slide appeared stating: "I have read and agree to abide by this arbitration agreement. I also agree to use an electronic acknowledgement to demonstrate my agreement." (*Id.* at p. 3). The slideshow would advance past that slide only when an employee typed "I Agree" into the dialog box and then clicked "Submit." (*Id.*). After Williams accepted the Arbitration Agreement, a certificate was automatically created for her by the SkillPort system. (*Id.* at p. 26).

    The Arbitration Agreement, in both the PDF version and in the slide show, expressly stated that it "is governed by the Federal Arbitration Act" and "applies to any dispute arising out of or related to Employee's employment or other relationship with Kemper Corporate Services, Merastar Insurance Company," and multiple other affiliates of Kemper. (*Id.* at pp. 2-3, 16). It further provided: "[T]his Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. **Such disputes**

**include without limitation disputes arising out of or relating to interpretation or application of this Agreement.**" (*Id.* at pp. 6, 16) (emphasis added).

Both before and after accessing and completing the Arbitration Agreement module, Williams used the SkillPort website to complete several other modules until her termination. (*Id.* at ¶ 7).

## Discussion

Williams disputes that she contracted to arbitrate her claims in the first place and additionally argues that the agreement, to the extent there is one, is invalid. (Doc. 17). Thus, before determining whether the Arbitration Agreement applies to Williams's claims or whether that very question itself is delegated to the arbitrator, the Court must first determine whether a valid contract exists. For "[e]ven the most sweeping delegation [clause] cannot send the contract-formation issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate." *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022). "But, if there is a contract, then an arbitration clause may delegate all other issues, including defenses, to the arbitrator . . . ." *Id.*

State law governs the power to form a contract. *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022). Here, the parties agree that Missouri law applies, and under that state's law, a valid contract requires offer, acceptance, and bargained-for consideration. *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. banc 2014).

### A. Offer

In Missouri, an offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is

invited and will conclude it." *Franklin v. Cracker Barrel Old Country Store*, No. 4:17 CV 00289 JMB, 2017 WL 7691757, at *3 (E.D. Mo. Apr. 12, 2017) (quoting *LoRoad, LLC v. Glob. Expedition Vehicles, LLC*, 787 F.3d 923, 928 n.3 (8th Cir. 2015)).

With regard to arbitration agreements, the use of words such as "contract" or "agreement"—while not essential—can be evidence of an offer to form a contract. *Trunnel v. Missouri Higher Educ. Loan Auth.*, 635 S.W.3d 193, 201 (Mo. Ct. App. 2021), *reh'g and/or transfer denied* (Oct. 26, 2021), *transfer denied* (Dec. 21, 2021); *see also Jackson v. Higher Education Loan Authority of Missouri*, 497 S.W.3d 283, 289 (Mo. Ct. App. 2016) (prominent use of the words "policy" and "acknowledge" in lieu of arbitration "agreement" or "contract" was evidence that no offer had been extended for which acceptance was required). A line for the employee's signature along with a statement that signing the document will manifest the employee's understanding of, and acceptance to be bound by, the arbitration agreement is also evidence of a valid offer. *Id.* at 202.

Here, Kemper's Arbitration Agreement training module presented a valid offer to enter into a contract. The document itself was called an "Arbitration Agreement," which signifies that the parties would agree to its terms. (Doc. 15-1 at p. 6). The introductory slide of the training module noted that "Kemper requires all of its employees to submit to an Arbitration Agreement," indicating that the offer of employment was conditioned upon the employee's acceptance of the agreement. (*Id.* at p. 15). It also referenced both the "Employee" and the "Company" as "parties to the arbitration" and explains the responsibilities of each party to the agreement. (*Id.* at p. 7-9). Finally, the last slide contained an "Acknowledgement Statement," providing: "I have read and agree to abide

by this arbitration agreement. I also agree to use an electronic acknowledgement to demonstrate my agreement." (*Id.* at p. 23). The employee then had to click "I Agree" to acknowledge his or her agreement. (*Id.*). These statements demonstrate Kemper's intent to make an offer that the employee could then accept. Thus, the Court finds that Kemper presented Williams with a valid offer.

### B. Acceptance

Williams argues that she never agreed to arbitrate her claims, noting that Kemper has provided only "what appears to be the equivalent of an online user agreement without Plaintiff's signature, which was sandwiched between a library of self-paced training classes taken by the Plaintiff." (Doc. 17 at p. 2).

In support of its motion, Kemper supplied the Court with a screenshot of the modules completed by Williams, along with her name, email address, access dates, completion dates, scores, and duration. (Doc. 15-1 at p. 11). For the Arbitration Agreement, the exhibit shows that Williams accessed the module at 5:23 p.m. on May 18, 2017, and completed the module at 7:03 p.m. that same day. (*Id.*). Kemper also provided a sworn declaration from Anabell Fabian, Senior Manager in Talent Management for Kemper Corporate Services, Inc., which verifies that the screenshot is a true and correct copy of the modules completed by Williams through January 1, 2019. (*Id.* at p. 2).

Under Missouri law, electronic modes of acceptance are recognized as valid and binding. Missouri has adopted the Uniform Electronic Transactions Act ("UETA"), which defines "electronic signature" as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to

sign the record[.]" *Franklin*, 2017 WL 7691757, at *4. The UETA then states, in pertinent part, that "[a] record or signature shall not be denied legal effect or enforceability solely because it is in electronic form." *Id.* Thus, Missouri courts frequently find that "click-to-accept" agreements are sufficient to satisfy the acceptance requirement. *See id.* (employee accepted Cracker Barrel's arbitration agreement when she marked the electronic training module "complete"); *Strain v. Murphy Oil USA, Inc.*, No. 6:15-CV-3246-MDH, 2016 WL 540810, at *3 (W.D. Mo. Feb. 9, 2016) (employee accepted electronic arbitration agreement when she entered her social security number and name and clicked an "acceptance box" on her job application); *Karzon v. AT & T, Inc.*, No. 4:13-CV-2202 CEJ, 2014 WL 51331 (E.D. Mo. Jan. 7, 2014) (employee deemed to have accepted arbitration agreement when he failed to opt out within the time provided by the company via email).

Here, Kemper provided evidence of the training modules completed by Williams on SkillPort, including the module completed on May 18, 2017, titled "Kemper Arbitration Agreement." (Doc. 15-1 at p. 11). Kemper also provided evidence of the Acknowledgement Statement portion of the module, which instructed the employee to click "I Agree" to electronically acknowledge his or her agreement to arbitrate. (*Id.* at p. 3, 23). Clicking "I Agree" would take the employee to a final slide, which stated in part: "Thank you! You have submitted your acknowledgement for the Arbitration Agreement." (*Id.* at p. 24). Once the employee clicked "Finish," a certificate would be generated memorializing the employee's completion of the module and acceptance of the Arbitration Agreement. (*Id.* at p. 3). Kemper submitted evidence of Williams's certificate, which was awarded on May 18, 2017. (*Id.* at p. 26).

On the basis of this evidence, the Court finds that Williams electronically accepted the Kemper Arbitration Agreement on May 18, 2017.

C. **Consideration**

Finally, Williams argues that the agreement, to the extent there was one, lacked consideration. Specifically, Williams asserts that the Arbitration Agreement is not a mutually binding bilateral contract; thus, it is not an enforceable agreement. She also asserts that at-will employment does not constitute bargained-for consideration under Missouri law, which Kemper does not dispute.

In order for a contract to be binding, there must be consideration for the offer and acceptance. *Franklin*, 2017 WL 7691757, at *4. "Consideration is created by either a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Strain v. Murphy Oil USA, Inc.*, No. 6:15-CV-3246-MDH, 2016 WL 540810, at *4 (W.D. Mo. Feb. 9, 2016) (quoting *Jimenez v. Cintas Corp.*, No. ED 101015, 2015 WL 160451, at *3 (Mo. Ct. App. Jan. 13, 2015)).

Both Missouri and federal courts have found that mutual arbitration agreements between an employer and an employee are sufficiently supported by consideration to be binding. *See McIntosh v. Tenet Health Ss. Hospitals, Inc./Lutheran Med. Ctr.*, 48 S.W. 3d 85, 88-89 (Mo. Ct. App. 2008). "Where there is no consideration other than the parties' mutual promises, the agreement is commonly referred to as a bilateral contract." *Jiminez*, 475 S.W. at 685 (citing *Baier v. Darden Restaurants*, 420 S.W.3d 733 (Mo. Ct. App. 2014)). Valid consideration supporting a bilateral contract depends on whether the parties' promises to each other are mutually binding. *Id.* "Consequently, in Missouri, a bilateral contract

also requires 'mutuality of obligation,' as essential to the formation a valid contract." *Id.* at 686. In other words, "neither party is bound unless both are bound." *Id.* (quotation omitted).

Where the practical effect of an arbitration agreement binds only one of the parties to arbitration, it lacks mutuality of promise, and is devoid of consideration. *Baker*, 450 S.W.3d at 776–77. Likewise, if the contract "allows one of the parties to retain a unilateral right to modify or alter the agreement the purported contract lacks valid consideration." *Strain*, 2016 WL 540810, at *4. "A promise to arbitrate is illusory when the agreement promises mutuality of arbitration, but effectively allows one party to proceed in court on its claims while the other party is required to resolve its claims by arbitration and is prohibited from taking any action in court." *Id.* (citation omitted).

Williams asserts that the Arbitration Agreement exempts Kemper from arbitrating certain claims, thus allowing it to seek redress through the court system while employees like Williams are bound to arbitrate their claims against Kemper. That's incorrect. The Arbitration Agreement expressly states that it applies, without limitation, to disputes with any individual arising out of the employment relationship that would otherwise be resolved in a court of law. (Doc. 15-1 at p. 6). The only exceptions it provides is for certain claims arising under ERISA and claims that must be submitted to administrative agencies such as the Equal Employment Opportunity Commission or state workers' compensation commissions. There is no language reserving any right for Kemper to modify the agreement or to bring claims against employees outside of the terms of the Arbitration

Agreement, nor is there any exception under which Kemper would not be bound by the Agreement.

Because the plain language of the Arbitration Agreement demonstrates a mutual promise to arbitrate, the Court finds that there was sufficient consideration to establish a valid contract under Missouri law.

## Conclusion

The evidence provided by Kemper demonstrates there is a valid and enforceable agreement to arbitrate. Whether the claims raised by Williams are subject to the Arbitration Agreement are delegated to the arbitrator pursuant to the delegation clause.

Accordingly, Kemper's Motion to Compel Arbitration and Stay Proceedings (Doc. 15) is **GRANTED**. This case is **STAYED** pending arbitration.

**IT IS SO ORDERED.**

DATED:   June 17, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**